**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| UNITED STATES OF AMERICA | Criminal Nos. 04-584, 04-586 |
|---|---|
| v. | |
| STEVEN EVANS | |

**DEFENDANT'S SENTENCING MEMORANDUM**

I. **INTRODUCTION**

As of result of the Supreme Court's ruling in *United States v. Booker*, 125 S.Ct. 738 (2005), this Court has enhanced sentencing discretion. That *Booker* sent virtually unprecedented shock waves throughout the federal judiciary requires no citation. Suffice it to say that after rendering its decision that made the Guidelines advisory, this Court must impose a *reasonable* sentence in keeping with the factors set forth in 18 U.S.C. § 3553(a) ("The Sentencing Reform Act"). *Id. at 764-65.* Thus, under the new sentencing scheme, this Court must consider the applicable Guidelines sentencing range when arriving at a defendant's sentence, 18 U.S.C. § 3553(a)(4), but only as one factor of several laid out in § 3553(a). *Id. at 764.* ("Without the 'mandatory' provision, the Act nonetheless requires judges to take account of the Guidelines together with other sentencing goals.").

Section 3553(a) directs Court to "impose a sentence *sufficient, but not greater than necessary*, to comply with…the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." (Emphasis added).

To aid in this analysis, §3553(a) requires sentencing courts to consider "the nature and circumstances of the offense and the history and characteristics of the defendant," "the kinds of sentences available," the Sentencing Guidelines, "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," and "the need to provide restitution to any victims of the offense. 18 U.S.C. §3553(a)(1)-(7).

Upon an application of the SRA to the facts and circumstances of this case, we respectfully submit that the Court make a finding that the advisory Guideline range is unwarranted.

## II. THE MANDATORY MINIMUM

The mandatory minimum for crack cocaine should not apply in this case. The mandatory minimum sentence set forth in 21 U.S.C. § 841(b)(1) should not apply in this case because the evidence at trial identified the controlled substance as "cocaine base;" not crack cocaine. See Exh. "1" (Trial Testimony of chemist Maria Shegu). See, United States v. Edwards, 397 F. 3d 570 (7th Cir.), *reh. en banc den*. (2005). Thus, the Court is free to sentence the defendant outside of the mandatory minimum for crack because both the government's proof failed to show that the controlled substance was "crack," and the jury did not unanimously agree that the controlled substance was indeed crack cocaine. The defendant recognizes that the Third Circuit in the United States v. Barbosa, 271 F.3d 438, 467 (3d Cir. 2001) held that the mandatory minimum set forth in 21 U.S.C. § 841(b)(1) applies to offenses involving any form of cocaine base, but because there is a split in the Circuits on this issue, defendant seeks to preserve the issue for appeal and possible resolution by the Supreme Court.

### III. DOUBLE JEOPARDY

The defendant's convictions on Count III (distribution of MDMA on February 25, 2004) and Count IV (distribution of MDMA within 1000 feet of a school on February 25, 2004) constitutes multiple punishment for the same offense in violation of the Double Jeopardy Clause because Section 841(a)(1) is a lesser included offense of Section 860(a).  United States v. Perry, 389 F.Supp. 278, 284-85 (D.R.I. 2005).  Thus, any punishment imposed for the February 25, 2004 distribution of MDMA and distribution in Counts III and IV constitutes multiple punishment for the same offense, and his conviction on Count III of Indictment No. 04-586 should be vacated.

### IV. THE GUIDELINES CALCULATIONS

#### A. THE QUANTITY OF MDMA SHOULD BE CALCULATED BASED ON PURE WEIGHT OF MDMA.

Evans plead guilty to three counts of the indictment, charging distribution of MDMA in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(C).  Based on the plain language of the statute and applicable rules of statutory construction, this Court must sentence Evans according to the "pure" weight of MDMA; not based upon the gross weight of the mixture or substance containing MDMA.

Section 841(a) prohibits, *inter alia*, the distribution of, or possession with intent to distribute, a controlled substance.  21 U.S.C. § 841(a)(1).  With respect to the distribution or possession with intent to distribute MDMA, a person convicted of violating Section 841(a)(1) "shall be sentenced to a term of imprisonment of not more than 20 years..."  21 U.S.C. § 841(b)(1)(C)("In the case of a controlled substance in Schedule I or II…such person shall be sentenced to a term of imprisonment of not more than 20 years").  Section 841(b)(1)(C) is silent with respect to whether, for the purposes of sentencing, the quantity of MDMA should reflect

either the pure weight or the gross weight of the substance.  By contrast, however, Section

841(b)(1)(A) specifically sets forth that a violation of Section 841(a) requires sentencing for the

gross weight of the controlled substance because the statute specifically states:

> ...any person who violates [Section 841(a)] shall be sentenced as follows:
>
> > (1)(A) in the case of a violation of [Section 841(a)] involving:
> >
> > (i) 1 kilogram or more of a *mixture or substance containing a detectable amount* of heroin...
> >
> > (ii) 5 kilograms or more of a *mixture or substance containing a detectable amount* of  (i) coca leaves...
> >
> > (ii) cocaine…
>
> such person shall be sentenced to a term of imprisonment which may not be less than 10 years or more than life....

21 U.S.C. § 841(b)(1)(A)(i) (emphasis added).

It is well-settled that where Congress "includes particular language in one section of a statute but omits it in another section of the same act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." INS v. Cardoza-Fonseca, 480 U.S. 421, 447-48 (1987); see Ki Se Lee v. Ashcroft, 368 F.3d 218, 223 (3d Cir. 2004) (finding same).  Moreover, the rule of lenity requires that "where a statute is punitive in nature, the rule...requires that any ambiguity in the statute be resolved in favor of the [defendant]." United States v. $734,578.82 in U.S. Currency, 286 F.3d 641, 657 (3d Cir. 2002).  In Section 841, Congress specifically set forth that for certain substances (*i.e.* heroin, cocaine, phencyclidine, lysergic acid diethylamide, etc.) sentencing shall be governed according to a "mixture or substance containing a detectable amount" of that particular substance.  See 21 U.S.C. § 841(b)(1)(A).  By contrast, for

sentencing related to MDMA, the statute is silent with respect to whether sentencing should be governed according to a "mixture or substance containing a detectable amount" of MDMA.  See 21 U.S.C. § 841(b)(1)(C).  Congress' decision not to include the "mixture or substance containing" language for Section 841(b)(1)(C) read in conjunction with the rule of lenity strongly suggests that Congress intended a pure weight measurement for sentencing purposes.  Cf., United States v. Penta, 173 F.Supp.2d 499, 503 (E.D. Va. 2001) (rejecting a pure weight measure of MDMA for the purposes of sentencing based on an interpretation of the Sentencing Guidelines, and not, based on the statutory construction of § 841(b)(1)).

Accordingly, this Court should sentence Evans according to the pure weight, rather than the gross weight, of MDMA.  The pure weight of MDMA, based upon the lab reports, is 23.5 grams, which is, in turn, converted to 11.75 kilos under the conversion table.  This yields a guideline level 16, plus one level enhancement for distribution near a school.  See Exb. 2 (MDMA lab reports).

      **B.**    **GROUPING.**

As set forth in the Presentence Report objection letter, the defendant submits that the "grouping" of the drug offenses pursuant to Section 3D1.2(d) of the Guidelines is incorrect.  The Guidelines do not contemplate grouping drug offenses that were charged in separate indictments, which involve different drugs, and occurred at different times, particularly where, as here, both the defendant and the Court contemplated that the defendant would be able to argue for concurrent sentences based on the separate indictments pursuant to the Court's inherent discretion under Section 18 U.S.C. § 3584.  These cases were consolidated only after defendant

was convicted in the cocaine case after a jury trial, and at the plea the defendant reserved the right to argue for concurrent sentences.

In short, the guideline for the cocaine case should be based at most on 16.98 grams or, converted, 339.6 kilos of marijuana, yielding a Guideline range of Level 26 (70 to 87 months). The Section 924(c) count requires a 60-month consecutive sentence, for a total Guideline range of 130 to 147 months.

The MDMA case should be based on 23.5 grams of pure MDMA which, converted, equals 11.75 kilos of marijuana, yielding a Level 17 (because the defendant pled guilty an acceptance of responsibility, adjustment should be added) yielding a Guidelines range of Level 14 with a corresponding range 18 to 24 months imprisonment.

While the Guidelines are far from clear,[1] grouping offenses here, which are not factually related and were charged in separate indictments, is not specifically provided for in the grouping rules. Section 3D1.2, involves grouping "all counts involving substantially the same harm". (emphasis added). Here, but for the fortuity of defendant's agreement to consolidate the MDMA indictment for plea and sentencing before this Court, there would be no reason to group the unrelated drug offenses. The only question would be whether a concurrent or consecutive sentence should apply under Section 5G1.2, which allows for concurrent sentencing on multiple counts of conviction in different indictments (see App. Note 1). U.S.S.G. § 5G1.2(d) ("in all other respects, sentences on all counts shall run concurrently, except to the extent otherwise required by law").

---

[1] There is some authority allowing for the grouping of related offenses that are charged in separate indictments, but were specifically consolidated for sentencing. See, United States v. Griggs, 47 F.3d 827, 232 (6th Cir. 1995).

In sum, grouping of the different crimes charged in separate indictments is not just, where, as here, the defendant only sought to simplify the sentencing process by consolidating the cases and preserved all his rights, as there was no plea agreement. All the Court need consider are the factors set forth in Section 3584(B). These are the same sentencing factors set forth in Section 3553(a), which the Court considers to achieve just punishment. Simply put, there is nothing the record in either case which cries out for consecutive sentences, especially since this Court will be required to impose a mandatory minimum sentence.

## V.     THE GUIDELINES DEPARTURES

### A.     THE GUIDELINES FOR CRACK COCAINE SHOULD NOT BE APPLIED UNDER 18 U.S.C. § 3553.

The Court should depart below the crack cocaine guidelines because the 100 to 1 quantity ratio of cocaine powder to cocaine base under the guidelines, according to the Sentencing Commission, leads to substantial unwarranted disparity in sentencing that has increased the gap in average sentences between racial groups. Hence, application of the crack cocaine guideline range to the facts of this case is not warranted.

The Sentencing Commission has reported that "the harms associated with crack cocaine do not justify its substantially harsher treatment compared to powder cocaine". The United States Sentencing Commission, 15 years of Guidelines Sentencing, pp xv-xvi (Nov. 2004).[2] These findings support sentencing a defendant convicted of crack cocaine possession under the lower guidelines for cocaine powder. Numerous district courts have utilized the Commission's own sentencing disparity findings in cases involving crack cocaine to conclude that a sentence below the crack cocaine guidelines is warranted. United States v. Perry, 2005 WL 2260196

---

[2] The 15 year report is available on the sentencing commission's website at http://www.ussc.gov/15-year/15year.htm.

(D.R.I. 2005); *see also* United States v. Clay, 2005 WL 1076243*3 - *6 (E.D. Tenn. 2005) (Greer, J.) (reviewing history of guidelines treatment of crack cocaine and US Sentencing Commission reports critical of 100-1 ratio, and concluding that ratio leads to "unjustified disparity" warranting reduced sentence); United States v. Williams, 372 F. Supp. 2d 1335, 1339 n.8 (M.D. Fla. 2005) (Presnell, J.)(noting "substantial criticism of sentencing disparity between powder cocaine and crack cocaine"); United States v. John Smith, 2005 WL 549057, *6-*10 (E.D. Wis. Mar.3, 2005)(Adelman, J.)(concluding after in-depth review of case law and commentary that 100 to 1 ratio lacks justification and creates unwarranted sentencing disparity); Simon v. United States, 2005 WL 711916, 2005 U.S. Dist LEXIS 4551 (E.D.N.Y. Mar. 17, 2005)(Sifton, J.)(imposing sentence below guideline range for crack cocaine based primarily on disparity between crack and powder); United States v. Harris, 2005 U.S. Dist. LEXIS 3958 (D.D.C. Mar. 7, 2005) (Robertson, J.)(Sentencing Commission's findings regarding crack/powder disparity "are sound authority" for conclusion that guideline ranges for crack are "greater than necessary"). As Judge Smith recently put it, "[r]eview of the sentencing commission reports leaves little doubt that the guidelines' penalties for crack lack any privileged justification that can withstand scrutiny under Section 3553." 389 F. Supp at 302.

Here, the evidence at trial shows typical street sales of cocaine dealing out of a vehicle. There was no evidence of violence or attempted violence in connection with the possession of cocaine or any of the alleged sales. Moreover, there was no evidence even of threats of violence in connection these street sales or the possession of the drugs so as to implicate the Sentencing Commission's heightened concern about violence in connection with dealing crack in order to warrant the imposition of the higher "crack" guidelines.

Accordingly, the advisory guideline range under Section 2D1.1 of Level 26 based on 16.98 grams of crack cocaine, yielding a guideline range of 70-87 months, plus a mandatory consecutive 60 months, is substantially greater than is necessary to reflect the seriousness of the offense, to promote respect for the law and to provide adequate general and specific deterrence. The conclusion that a non-guideline sentence is called for under these circumstances is supported by the majority of the district courts that have evaluated the crack/powder cocaine sentencing disparity in the wake of Booker/Fan Fan.  United States v. Smith, 359 F. Supp. 2d at 777; United States v. Leroy, 373 F. Supp. 2d 887, 896 (E.D.Wis. 2005); United States v. Beamon, 373 F. Supp. 2d 878, 887 (E.D. Wis. 2005); United States v. Simon, 361 F. Supp. 2d at 49; United States v. Clay, 2005 WL 1076243 (E.D. Tenn. May 6, 2005).  But see United States v. Pho, 433 F.3d 53 (1st Cir. 2006); United States v. Euro, 2006 W.L. 440099 (4th Cir. 2006).

> **B.    THE GOVERNMENT'S SENTENCING FACTOR MANIPULATION IN THE MDMA CASE REQUIRES DOWNWARD DEPARTURE.**

Where the Government engages in improper conduct that has the effect of increasing a defendant's sentence, the Court has the discretion to depart downward in sentencing.  See United States v. Kaczmarski, 939 F.Supp. 1176, 1180 (E.D. Pa. 1996) (quoting United States v. Okey, 47 F.3d 238 (7th Cir. 1995)); see also United States v. Padilla, 2003 WL 22016886 at *5 (E.D. Pa. 2003) (citing United States v. Drozdowksi, 313 F.3d 819, 825 n. 3 (3d Cir. 2002)).  Although the Third Circuit Court of Appeals has not provided any specific guidance on this issue, the courts of the Third Circuit have favored the First Circuit's approach in *United States v. Egemonye*, 62 F.3d 425 (1st Cir. 1995), which provides the sentencing court with authority to exclude tainted transactions from the computation of sentences where "government agents improperly [enlarge] the scope or scale of the crime."  62 F.3d at 427; see also Kaczmarski¸ 939 F.Supp. at 1182  (adopting First Circuit's approach to sentence factor manipulation).  Sentencing

manipulation need not arise to the level of a constitutional violation in order to be a viable sentencing factor.  See id. (citing Egemonye, 62 F.3d at 427).  Indeed, Judge Dalzell found much to commend about the First Circuit's approach to sentence factor manipulation:

> The first of these attractive features is fundamental fairness.  The Government in sting operations has it within its power to set the scope of the criminality.  Unless the defendant evinces an objective intent to alter that scope, it opens the door to injustice to grant the Government a blank check on a defendant's sentencing fate...This concern for fundamental fairness is buttressed by a second reason in favor of [the First Circuit's] approach.  In the present Guidelines regime, sentences are directly driven by amounts of loss and quantity of drugs.  Since we are unaware of any evidence of Congressional intent under the Sentencing Reform Act *completely* to transfer sentencing decisions to the Government, it simply will not do for sentencing judges effectually to cede the scope of loss or quantity to the authors of successful stings.  Lastly the greatest advantage of [the First Circuit's] approach is that it introduces a limiting principle....[otherwise] there would be no meaningful limit on the Government to manipulate a defendant's greed and thus his sentence.

Kaczmarski, 939 F.Supp. at 1182 (emphasis in original) (internal citations omitted).

In Kaczmarski, the Court found that the Government did not engage in sentence factor manipulation because the Government "was conservative in [its] fraud plans, and that it was [defendant], and not the Government, who upped the ante."  In this case, unlike Kaczmarski, it was the Government, and not Evans, who upped the ante with respect to the sentencing factor in the MDMA case.  Here, the Government engaged in improper conduct to increase Evans' sentence exposure.  Rather than arresting Evans after the first alleged sale of ten (10) MDMA pills on January 21, 2004, the Government pursued three additional purchases of MDMA pills.  In each of the three subsequent alleged transactions on February 5, 2004 (74 MDMA pills), February 25, 2004 (200 MDMA pills), and March 29, 2004 (180 MDMA pills), the Government, and not Evans, initiated calls to Evans requesting to purchase MDMA pills.  See PSI at ¶¶19, 20 and 21.

The Government's approach unnecessarily, and severely, increased Evans' sentencing exposure.

Here, the Government's conduct flies in the face of the principles of fundamental fairness for at least three principled reasons: (1) the Government, and not Evans, engaged in behavior to enlarge the scope of Evans' sentencing fate; (2) it would be unfair for this Court to cede the scope quantity to the authors--the Government--of the sting operation; and (3)  it would place a meaningful limit on the Government's conduct which necessarily took advantage of Evans to increase his sentencing exposure.  Accordingly, the Court should depart below the advisory guidelines based on sentencing factor manipulation.

      C.      **THE TOTALITY OF THE CIRCUMSTANCES - § 5K2.0.**

A district court may "impose a sentence outside the range established by the applicable guidelines, if the Court finds 'that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.'" U.S.S.G. § 5K2.0 (quoting 18 U.S.C. § 3553(b)); see also United States v. Philiposian, 267 F.3d 214, 219 (3d Cir. 2001).  The Sentencing Guidelines provide a list of "encouraged factors" upon which departure may be based.  Koon v. United States, 518 U.S. 81, 94, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996); see U.S.S.G. § 5K2.0 ("identifying some of the factors that the Commission has not been able to take into account fully in formulating the guidelines").

There are a number of circumstances in this case which are not adequately taken into consideration by the Guidelines.  First, we have demonstrated that the MDMA case was subject to sentencing factor manipulation as well as the Guidelines will be incorrectly enhanced if the

Court does not consider the "pure" weight of the MDMA.  Second, the defendant's physical condition and mental emotional health are mitigating factors.  This is because the defendant is suffering from high blood pressure and a back injury from three car accidents.  He has been evaluated previously as a "paranoid personality disorder" (PSI ¶ 52) and is taking psychotropic medications prescribed by physicians at the Federal Detention Center.  The competency evaluation previously submitted to the Court by Dr. Kirk Heilbrun confirms that Mr. Evans' son has been diagnosed with paranoid schizophrenia and there is a history of psychiatric illness in the family.  Further, Dr. Heilbrun confirmed that individuals with Mr. Evans' psychiatric profile are described as "experiencing significant personality problems and sometimes symptoms of thought disorder . . .".

Lastly, Mr. Evan's life circumstances are another mitigating factor in that defendant did not finish high school (PSI ¶ 54), and his family circumstances were certainly not ideal.[3]  All of these factors militate in favor of a non-guidelines sentence under Booker/Fanfan as the Court is required not only to take into account the seriousness of the offense, but also to consider the "history and characteristics" of the defendant to foster the need for the sentence to "provide the

---

[3] Dr. Heilbrun also confirmed Mr. Evans' unusual family circumstances in which he has had little or no contact with his father, a brother who suffered from drug addiction and who was shot by his father.

defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner . . ." This cannot be accomplished by providing a harsh crack Guidelines sentence with this defendant.

        Respectfully submitted,

        */s/ Nicholas C. Harbist*
        NICHOLAS C. HARBIST
        Electronic ID: nch3279
        JASON W. NORRIS
        Attorney ID:  93947
        BLANK ROME LLP
        18th and Cherry Streets, One Logan Square
        Philadelphia, Pennsylvania 19103-6998

## CERTIFICATE OF SERVICE

I, Nicholas C. Harbist, Esquire, hereby certify that a true and correct copy of Defendant's Sentencing Memorandum has been served by me on this date, via hand delivery, upon the following:

Jeffery W. Whitt, Esquire
Assistant United States Attorney
U.S. Department of Justice
United States Attorney
Eastern District of Pennsylvania
615 Chestnut Street, Suite 1250
Philadelphia, PA  19106-4476

Dated:  April 14, 2006                    */s/ Nicholas C. Harbist*
                                          NICHOLAS C. HARBIST
                                          Electronic ID: nch3279
                                          JASON W. NORRIS
                                          Attorney ID:  93947
                                          BLANK ROME LLP
                                          18th and Cherry Streets, One Logan Square
                                          Philadelphia, Pennsylvania 19103-6998